RENDERED:  AUGUST 14, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0889-MR

CODY AUXIER                                             APPELLANT


              APPEAL FROM SCOTT CIRCUIT COURT
v.             HONORABLE KATHRYN H. GABHART, JUDGE
               ACTION NO. 22-CI-00481


SRIKANTH NITHYANANDAM;
CENTRAL KENTUCKY
RADIOLOGY, PLLC; AND ROBERT
COUNTS POPE                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND KAREM, JUDGES.

EASTON, JUDGE:  This is a medical negligence case.  Appellant Cody Auxier (Auxier) appeals the summary judgment of the Scott Circuit Court in favor of Appellees Srikanth Nithyanandam (Physician), Robert Pope (Radiologist), and Central Kentucky Radiology, PLLC (CKR).  Auxier filed a malpractice action seeking damages for failure to properly recognize and treat a herniated disc,

including failure to restrict his football and weightlifting activities at Georgetown College, which worsened his condition and resulted in permanent damage to his spinal cord. The circuit court granted summary judgment against Auxier upon finding the Complaint was time-barred. Auxier argues the circuit court erred in its application of the discovery rule and by including Radiologist and CKR in Physician's dispositive motion. Physician argues waiver as an alternative defense. After our review, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Auxier is a gifted athlete who played football for state champion Trinity High School and for Georgetown College. As a football player, Auxier had a history of concussions and hip, shoulder, and back injuries both before and after the event at issue. In August 2020, Auxier was weightlifting with kettlebells as part of his participation in strength training with his college football team when he felt a "pop" in his lower back, immediately followed by pain that radiated down his leg. Auxier was evaluated by the team athletic trainer, who suspected a possible herniated disc. She recommended that Auxier see the team doctor and arranged an appointment for him the following day.

Auxier was seen by Physician, who is employed by UK Health and serves as a contractor for Georgetown College. Physician diagnosed Auxier with a lumbar strain at L5-S1 without neurological deficits and ordered an X-ray of his

lower back.  Radiologist dictated his findings from the images, noting a loss of disc space at L5-S1, minimal degenerative endplate changes, normal alignment, and to "[c]onsider further evaluation with MRI."

Physician did not speak to Radiologist directly and did not order an MRI.  Neither Physician nor Radiologist made note of any observations or concerns with the T12-L1 region of Auxier's spine.  Physician referred Auxier to physical therapy but placed no restrictions on either his football or weightlifting activities.  Auxier was a defensive tackle nose guard whose weightlifting regimen included bench pressing 350 pounds and squatting 500-pound repetitions.

Auxier continued to play football and participate in weightlifting.  Although there may have been initial relief from symptoms following the kettlebell incident, this would prove to be temporary.  Auxier later sustained further injuries to his foot, ankle, and hip.  Auxier continued to experience pain in his lower back, despite physical therapy, and stated later to his primary care physicians that he was told to "train through it."  Physician's notes from the initial visit and follow-up care in 2020 indicate Auxier was advised to report to the emergency room if he experienced any red-flag symptoms, such as urinary or fecal incontinence or saddle

anesthesia.[1]  There is dispute in the deposition testimony whether Auxier reported such red-flag symptoms to Physician or the athletic trainer prior to July 2021.

At the end of the academic year, Auxier returned home where he continued to complain of low back pain.  His symptoms were getting worse.  His mother was concerned that Auxier may have suffered more than just a lumbar strain, so she arranged for her son to be seen by doctors at the University of Louisville Orthopedics and Sports Medicine group.  On July 8, 2021, Auxier presented to Dr. Miller and Dr. Pohlgeers with a chief complaint of persistent lower back pain, which he attributed to the August 2020 kettlebell injury.  The office visit notes state that patient's pain began 10 months ago after lifting a kettlebell.

Dr. Miller ordered an MRI, which showed disc protrusions at both L5-S1 and T12-L1 with nerve compression.  Both Dr. Miller and Dr. Pohlgeers discussed the results of the MRI with Auxier on July 20, 2021.  The protruding disc at T12-L1 was then pressing on the spinal cord and required an immediate referral to a spine specialist.

---

[1] Saddle anesthesia is numbness or loss of feeling in the areas that would touch a saddle, such as the inner thighs, backs of the legs, and around the rectum.  Saddle anesthesia, along with bladder and bowel dysfunction, may indicate *cauda equina* syndrome, a medical emergency requiring quick treatment.  *Cauda equina* is the bundle of nerves at the end of the spinal cord within the spinal canal.  *Herniated disk*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/herniated-disk/symptoms-causes/syc-20354095 (last visited Jul. 17, 2026).

Auxier was referred to an orthopedic surgeon, Dr. Gum, who initially advised Auxier that he needed a simple discectomy. Unfortunately, subsequent CT scan results would reveal that Auxier actually needed a more extensive and invasive procedure. Auxier and his mother decided to seek a second opinion with a neurosurgeon, Dr. Villanueva, who was unable to evaluate Auxier until January of 2022. Prior to this scheduled consultation, Auxier suffered a loss of bladder control and numbness in the groin area, as well as erectile dysfunction. He reported to the emergency room at Baptist Health Louisville, where Dr. Villanueva had hospital privileges. Auxier was then evaluated by Dr. Villanueva in August 2021.

Dr. Villanueva explained that Physician should have ordered an MRI at the time of the kettlebell injury instead of just ordering an X-ray. He further explained that Radiologist had misread the X-ray image from August 2020 because he failed to see calcifications that were evidence of injury to the T12-L1 region of Auxier's spine. It is not clear to what extent Dr. Villanueva thought a disc herniation was apparent on the 2020 X-ray or if nerve compression could be seen on such an image, but there was a sign of a problem that should have been evaluated at that time according to Dr. Villanueva.

Dr. Villanueva thought that Auxier should have been restricted from football and weightlifting activities until the disc at T12-L1 was further evaluated

and treated. Dr. Villanueva explained that the calcifications or bone growth indicated on the MRI scans take time to develop and did not happen overnight. Whatever the timeline for the injury at T12-L1, the bone was now pushing on the spinal cord in the *cauda equina* region and required prompt surgical intervention. Dr. Villanueva also explained that the problems at T12-L1 could have caused the other injuries Auxier later suffered to his foot, ankle, and hip. Auxier testified at his deposition that this consultation with Dr. Villanueva on August 31, 2021, was the first time he realized he had received "bad care" from Physician and Radiologist.

On September 23, 2021, Auxier underwent a decompression, discectomy, and posterolateral fusion at the T12-L1 region of his lumbar spine. He was left with irreversible erectile dysfunction, urinary incontinence, and fecal incontinence. To date, he continues to suffer from pain and weakness in the lumbar region, weakness in the legs, erectile dysfunction, pilonidal cysts,[2] and depression.

---

[2] A pilonidal cyst is an unusual pocket in the skin near the tailbone at the top of the buttocks that can become infected and be very painful. *Pilonidal cyst*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/pilonidal-cyst/symptoms-causes/syc-20376329 (last visited Jul. 17, 2026). Auxier testified at his deposition that these cysts are the result of his inability to twist around and properly clean himself after bowel movements. As a result, he must now shower after bowel movements.

On August 1, 2022, one year and almost two weeks after Dr. Miller and Dr. Pohlgeers advised Auxier he had a previously untreated herniated disc at T12-L1, Auxier filed suit against Physician, Radiologist, and CKR for medical malpractice. Auxier alleged Radiologist failed to identify the disc herniation at the T12-L1 level, which, because of continued deterioration, ultimately led to incontinence and erectile dysfunction. He alleged Physician breached the standard of care by failing to order an MRI to determine whether Auxier had a herniated disc, and by failing to restrict his football and weightlifting activities, which allowed the protruding disc to continue pressing on the spinal cord ultimately causing permanent damage to the nerves.

In June 2024, Physician filed a Motion for Summary Judgment on the basis that a liability waiver signed by Auxier released Physician from any alleged negligence claims. The circuit court denied that motion, but, shortly before the circuit court denied the motion on the waiver issue, Physician filed two additional motions: (1) requesting summary judgment on the basis that the Complaint was time-barred and (2) requesting partial summary judgment as to Auxier's damages (which would be rendered moot if the case was time-barred). Radiologist and CKR joined the Motion for Summary Judgment on statute of limitations grounds. Auxier responded that the lawsuit was timely under the discovery rule.

The circuit court heard arguments in January 2025 and granted the Motion for Summary Judgment by Order entered on February 18, 2025. The circuit court concluded, as a matter of law, that by at least July 2021, a reasonable person would be under an obligation to inquire as to the medical care he received following the August 2020 kettlebell incident, which would include the medical care provided by Physician and Radiologist following the incident and the X-ray report. Since the Complaint in this case was not filed until August 1, 2022, the action was time-barred.

The circuit court reasoned that, following the July 20, 2021, consultation with his primary care physicians concerning the MRI results, Auxier knew he had an injury which he attributed to the kettlebell incident in August of 2020. On July 20, 2021, Auxier had knowledge of which medical providers provided him treatment for that injury in August of 2020 and that those providers had supposedly missed the injury at T12-L1. Furthermore, on July 20, 2021, Auxier had knowledge that Physician had not ordered an MRI to determine the extent of the injury and that Radiologist had read the X-ray. On July 20, 2021, Auxier knew that Physician did not place any restrictions on him and allowed him to return to football and weightlifting. As such, as of July 20, 2021, Auxier knew he had experienced an injury and had, from that date, a responsibility to exercise

reasonable diligence to both determine the cause of that injury and to file any action within one year of that date.

The circuit court rejected Auxier's argument that the injury was not discovered until the August 31, 2021, consult with Dr. Villanueva. The circuit court reasoned that Auxier's decision to wait and see the neurosurgeon to confirm his suspicions that he had received "bad care" did not trigger the statute of limitations under the discovery rule. Instead, it was the date upon which Auxier discovered the injury, July 20, 2021, at his consult with Dr. Miller and Dr. Pohlgeers, and from that date he had a duty to exercise ordinary care and diligence to confirm within one year whether Physician and Radiologist's medical care caused or worsened his injury and to file his claim. The circuit court never ruled on the Motion to Reconsider the waiver issue.

Auxier filed a Motion to Vacate, which was denied by Order entered in June 2025. The circuit court rejected Auxier's argument that the court had *sua sponte* joined Radiologist and CKR to Physician's Motion for Summary Judgment on timeliness grounds. The circuit court found that Physician's arguments made in Physician's motion also applied to Radiologist and CKR through joinder, and that requiring Radiologist to file a separate written motion that would be virtually identical to Physician's motion would be a "useless formality." The trial court further determined the Motion to Vacate did not raise newly discovered or

previously unavailable evidence. This timely appeal followed. All issues have been properly preserved, and the briefs are compliant with the Kentucky Rules of Appellate Procedure.

## STANDARD OF REVIEW

This appeal concerns whether the trial court properly granted summary judgment against Auxier on his Complaint. The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Motorists Mut. Ins. Co. v. First Specialty Ins. Corp.*, 706 S.W.3d 120, 124 (Ky. 2024) (internal quotation marks and citations omitted).

Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In ruling on a motion for summary judgment, the Court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Id.* at 480. A party opposing a summary judgment motion cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id.* at 481.

-10-

Summary judgment can only be properly granted "where the movant shows that the adverse party could not prevail under any circumstances." *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985) (citation omitted). If a claim is time-barred, the factual disputes about the merits of the underlying claim are not material, and summary judgment should be granted.

## ANALYSIS

Auxier raises two questions on appeal: (1) did the circuit court properly apply the discovery rule, and (2) did the circuit court properly grant summary judgment to Radiologist. Because we answer each question in the affirmative, we need not address Physician's alternative argument that the liability waiver signed by Auxier bars his claims.

## THE CIRCUIT COURT PROPERLY APPLIED THE DISCOVERY RULE

In Kentucky, an action against a physician, surgeon, or hospital must be brought within one year. KRS[3] 413.140(1)(e). The statute begins to run pursuant to KRS 413.140(2), which provides that such cause of action:

> shall be deemed to accrue at the time the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within five (5) years from the date on which the alleged negligent act or omission is said to have occurred.

---

[3] Kentucky Revised Statutes.

The discovery rule in the medical malpractice context has been further

explained by the Kentucky Supreme Court in *Wiseman v. Alliant Hospitals, Inc.*,

37 S.W.3d 709 (Ky. 2000):

> The statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered. This rule entails knowledge that a plaintiff has a basis for a claim before the statute of limitations begins to run. The knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and, (2) by whom the wrong has been committed.

*Id*. at 712 (internal quotation marks and citations omitted).

Under the discovery rule, it is the date of the *actual or constructive*

*knowledge of the injury* which triggers the running of the statute of limitations. *Id*.

And there is a distinction between discovery of harm and discovery of injury.

"Injury" does not mean mere physical harm. As the *Wiseman* Court explained:

> Harm in the context of medical malpractice might be the loss of health following medical treatment. "Injury," on the other hand, is defined as "the invasion of any legally protected interest of another." Thus, injury in the medical malpractice context refers to the actual wrongdoing, or the malpractice itself. Harm could result from a successful operation where a communicated, calculated risk simply turns out poorly for the patient, although the medical treatment met the highest medical standards. In such case, there would be no "injury," despite the existence of "harm." Under the discovery rule, it is the date of the actual or constructive knowledge of the injury which triggers the running of the statute of limitations.

*Id.* (citations omitted).

This does not mean that the patient must know that he has a legal cause of action before the clock starts running. *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982). But it does mean that the limitations period will not begin until the patient knows or should know that a defendant may have wronged him—*i.e.*, negligently contributed to his bad medical outcome. *Wiseman*, 37 S.W.3d at 712.

Importantly, the discovery rule stops tolling the statute once a plaintiff knows, either actually or constructively, that the defendant *may* have caused him injury—definitive knowledge of causation is not needed. *Adams v. 3M Co.*, No. CIV. 12-61-ART, 2013 WL 3367134, at *3 (E.D. Ky. Jul. 5, 2013) (citing *Louisville Tr. Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979)). Nor does the discovery rule require knowledge that the wrong is *actionable*. The statute of limitations begins to run simply upon knowledge that one has been wronged. *Conway*, *supra.*

"Constructive knowledge, through awareness of sufficient 'critical facts' to put the plaintiff on notice, will trigger the statute of limitations period." *Adams*, 2013 WL 3367134, at *3. Once a plaintiff encounters facts that should excite his suspicion that a defendant negligently caused him harm, a patient effectively has actual knowledge of the entire claim. *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010) (citation omitted).

Auxier makes several challenges to the circuit court's application of the discovery rule. First, he argues the circuit court erroneously equated "harm" with "injury." As of July 20, 2021, Auxier insists he only knew he had suffered *harm*: a herniated disc pressing into his spine at T12-L1. He maintains that the herniated disc is a *diagnosis*, nothing more. He knew he was in pain. He knew he was being referred to a neurosurgeon. But Auxier denies he knew Physician's failure to order an MRI or restrict his activities had caused the harm he was now suffering.

We pause here just to note the challenges of causation presented for Auxier's claim. The claim is that the doctors in 2020 should have seen calcifications around T12-L1 and further investigated the condition of that area. But calcifications indicate *prior* injury, and the development of the later problems stemming from this area indicate a progressive process. It may have been quite difficult to show that the kettlebell incident alone was some triggering event for this process. Other injuries both before and after that event could have contributed to it. Again, the merits of the claim are not decided if the claim is time-barred.

Auxier's deposition testimony revealed that, while Dr. Miller and Dr. Pohlgeers explained he had a herniated disc at T12-L1, he did not know the herniated disc had been present for nearly a year, if in fact it was, until his conversation with Dr. Villanueva. Auxier argues that in July 2021, he did not

know, and could not have known, that his symptoms were caused by potential malpractice, *i.e.*, the failure to see the calcifications on the 2020 X-ray. He insists that his injury was the failure to see evidence of a condition at T12-L1 that predated the August 2020 kettlebell injury at L5-S1 with that failure allowing a herniated disc to become progressively worse and ultimately causing Auxier irreversible harm. If so, Auxier still knew of that failure in July of 2021.

In *Wiseman*, a medical malpractice plaintiff visited multiple doctors seeking treatment for post-surgical pain, but they were all "indefinitive as to the origin of her pain and attributed it to a tailbone injury." 37 S.W.3d at 712. While the plaintiff "may have suspected that something went wrong during the surgery, that in and of itself was insufficient to accrue a cause of action[,]" because all she had was a "mere suspicion of injury due to medically unexplainable pain[.]" *Id.* at 712-13. The *Wiseman* Court determined that the cause of action accrued when "the fact of her injury became objectively ascertainable"—when another surgeon operated and found that the first surgeon had left behind a piece of a medical instrument. *Id.* at 711, 713.

Here, while Auxier could argue that he may not have had *actual knowledge* of his injury until the August consult with Dr. Villanueva, he had *constructive knowledge* of the injury in July. That is when the fact of his injury became "objectively ascertainable." That is when he should have known that

-15-

Physician and Radiologist may have wronged him. And under the discovery rule, constructive knowledge of the injury triggers the running of the statute of limitations.

It is undisputed that as of July 20, 2021, Auxier knew he injured his back in August 2020 performing kettlebell swings at football practice and that the athletic trainer suspected he had a herniated disc. As of July 20, 2021, Auxier sought medical attention for that injury from Physician, who diagnosed only a lumbar strain and ordered only an X-ray to evaluate the injury. Radiologist interpreted those films.

Yet Auxier continued to have persistent pain that he associated with the August 2020 injury, and that pain did not resolve after physical therapy. This persistent pain is the reason he sought out a second opinion and additional tests from Dr. Miller and Dr. Pohlgeers. Unlike the plaintiff in *Wiseman* who visited multiple doctors that were unable to explain the origin of her pain, Dr. Miller and Dr. Pohlgeers explained Auxier's continued pain as resulting from a herniated disc at T12-L1 that had not been previously discovered by Physician or Radiologist. These undisputed facts should have *excited Auxier's suspicion* that Physician and Radiologist may have wronged him. As a result, Auxier had one year from obtaining this constructive knowledge to investigate whether he had a legally cognizable cause of action against them and within which to file that claim.

The discovery rule extends the commencement of the statute of limitations only up to the time that the harmful effect of the complained of negligence first manifests itself. *Hall v. Musgrave*, 517 F.2d 1163, 1167 (6th Cir. 1975). While Auxier's August 31st consultation with Dr. Villanueva may have *reinforced* his knowledge of his potential claim, the July 20th consultation with Dr. Miller and Dr. Pohlgeers was the first time medical negligence manifested itself. The supposedly missed injury, a herniated disc at T12-L1, was now objectively ascertainable. At that point in time, Auxier possessed the constructive knowledge and critical facts needed to connect the dots that his continued back pain was the result of a missed herniated disc and not a lumbar strain at a different area of the spine.

Auxier was required to investigate his potential legal claim with reasonable diligence. He could not wait for Dr. Villanueva to connect the dots for him as the starting point. Seeking such reinforcing knowledge is part of the whole purpose of the discovery rule. It allows for further investigation while still permitting a timely case to be filed. Again, actual or constructive knowledge that a wrong may have been done is the statute's trigger, and that knowledge in this case came about on July 20, 2021.

Auxier relatedly argues the circuit court's application of the discovery rule erroneously required him to discover the medical malpractice on his own.

Auxier insists *Wiseman* mandates a different analysis. Auxier argues he possesses no medical knowledge and there was no way he could possibly understand how Physician and Radiologist's negligence caused his injury until Dr. Villanueva explained it to him.

Auxier's injury is complex and difficult to understand, especially for someone with a history of concussions and memory loss and no medical background. He maintains the circuit court erred in failing to consider these issues when it determined that he was on notice of his injury after simply learning he had a herniated disc at T12-L1. Because he possessed no medical knowledge, Auxier should have been permitted to rely on Physician's diagnosis of a lumbar strain until he learned otherwise from Dr. Villanueva. We must disagree.

"One who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician. The nature of the tort and the character of the injury usually require reliance on what the patient is told by the physician or surgeon." *Wiseman*, 37 S.W.3d at 712-13. Here, Auxier's mother testified in her deposition that they trusted the team doctor, and if he said it was a strain, then they believed him. But Auxier actively sought out additional tests and a second opinion from Dr. Miller and Dr. Pohlgeers after he returned home for summer break. And it was at this July 20, 2021, consultation when he learned his injury was more than just a lumbar strain.

-18-

While Auxier may have been entitled to rely on the opinion of Physician prior to summer break, he was certainly put on notice on July 20, 2021, that he could no longer reasonably rely on the lumbar strain diagnosis. And while Auxier's concussion-related memory loss issues present unfortunate challenges, they do not relieve him from his obligation to exercise ordinary care and diligence to discover whether he had an actionable claim against Physician and Radiologist.

The discovery rule uses a reasonably prudent person test. *Davis v. All Care Med., Inc.*, 986 S.W.2d 902, 906 (Ky. 1999). The "reasonable person" standard is an often-utilized term of art that involves an inherently objective test: a reasonable person is "a person who exercises the degree of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own and of others' interests. The reasonable person acts sensibly, does things without serious delay, and takes proper but not excessive precautions." *Wilson v. Commonwealth*, 628 S.W.3d 132, 143 (Ky. 2021) (citing *Reasonable Person*, *Black's Law Dictionary* (8th ed. 2004)). Auxier is held to the standard of what a reasonable person would understand about the possibility he has suffered medical malpractice.

Although Auxier concedes his memory "wasn't good" due to his prior head injuries, he admits he was told in July of 2021 he had a herniated disc and needed to see a neurosurgeon, and he related this problem to the kettlebell injury.

The question is not when Auxier *felt* his suspicions of "bad care" were validated, nor when he actually *understood* he had a malpractice claim. The question is when a reasonably prudent person would possess adequate information to reasonably suspect that Physician and Radiologist failed to properly diagnose a herniated disc following the kettlebell injury. Again, that constructive knowledge arose on July 20, 2021, when Auxier's injury became objectively ascertainable, *i.e.*, when he learned the MRI showed the existence of more than just a lumbar strain. Auxier knew then that Physician and Radiologist arguably missed something important.

We also reject Auxier's argument that the application of the discovery rule in this case was a fact issue for the jury. Whether an action is barred by the statute of limitations is a question of law to be decided by the courts. *Cuppy v. Gen. Acc. Fire & Life Assur. Corp.*, 378 S.W.2d 629, 631 (Ky. 1964).

Here, there is no dispute of material fact as to when the MRI results were communicated to Auxier, and the circuit court did not err in finding, as a matter of law, that on July 20, 2021, Auxier possessed adequate information to reasonably suspect Physician and Radiologist may have failed to properly diagnose his condition following his August 2020 kettlebell injury.

Finally, we reject Auxier's argument that his continued treatment by Physician tolled the statute of limitations. The Kentucky Supreme Court adopted the continuing course of treatment doctrine to toll the statute of limitations in

medical malpractice actions in *Harrison v. Valentini*, 184 S.W.3d 521 (Ky. 2005), *as modified on denial of reh'g* (Mar. 23, 2006). There, Kentucky's highest Court held that "where a patient relies, in good faith, on his physician's advice and treatment or, knowing that the physician has rendered poor treatment, . . . continues treatment in an effort to allow the physician to correct any consequences of the poor treatment, the continuous course of treatment doctrine operates to toll the statute of limitations until the treatment terminates at which time running of the statute begins." *Id.* at 525. Auxier's reliance on this doctrine fails, because the statute of limitations is tolled *only if the patient is under the continuing care of the physician* for the injury caused by the negligent act or omission. Here, there was no evidence that Auxier continued treatment with Physician for his lower back pain after he left campus for the summer in 2021.

The undisputed medical records show Auxier's last treatment date with Physician was April 21, 2021, when he was seen for an injury to his ankle and foot. While there is a subsequent note in Auxier's records that he had surgery in September, he was not seen by Physician at this time and was unable to return to football activities after his spinal surgery. Auxier was therefore not a "patient under the continuing care" of Physician and the continuing course of treatment doctrine does not operate to toll the statute of limitations in such manner as to save his time-barred claims.

Auxier had one year from July 20, 2021, to file his Complaint. Unfortunately, the Complaint was filed almost two weeks too late, and the action is thus time-barred. Physician, Radiologist, and CKR were therefore entitled to summary judgment as a matter of law.

## THE CIRCUIT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR RADIOLOGIST

Separate from the allegations against Physician, Auxier asserts Radiologist misread the X-ray following his August 2020 kettlebell injury, and had he read it correctly, Radiologist would have seen calcifications surrounding the herniated disc at T12-L1 and would have known that there was an existing issue separate from the herniation at L5-S1 caused by the kettlebell workout. One of Auxier's expert witnesses testified in support of this claim.

The circuit court granted summary judgment in favor of Radiologist and CKR. Auxier challenges this decision because Radiologist and CKR failed to file a formal Motion for Summary Judgment on statute of limitations grounds, and because the identity of Radiologist was not known to Auxier until this litigation commenced. We disagree with each of these contentions.

Radiologist did not file his own motion. And nowhere in Physician's motion was Radiologist ever mentioned. But the trial record at page 1546 contains Radiologist's "Joinder to Co-Defendant's Pretrial Motions filed December 05, 2024." The Joinder states that Radiologist and CKR adopt and incorporate

-22-

arguments set forth in various motions by Physician, including the Motion for Summary Judgment based on the statute of limitations. In addition, at the pretrial conference held on January 9, 2025, Radiologist, by and through his counsel, confirmed that he joined in the Motion for Summary Judgment and argued that Auxier had adequate information that his injuries occurred prior to the commencement of the statute of limitations period when measured from one year prior to the filing of the suit in August 2022.

The circuit court did not err in determining the facts and legal issues raised were identical for Physician and Radiologist, and that making separate detailed motions was duplicative and an inefficient use of the circuit court's time. Auxier was not surprised by some new argument at the summary judgment hearing because the arguments articulated in Physician's filings applied equally to Radiologist and CKR.

A "summary judgment may be properly granted despite the lack of a motion requesting such relief *if* the formal motion for summary judgment would have been a 'useless formality.'" *Abel v. Austin*, 411 S.W.3d 728, 734 (Ky. 2013) (citations omitted). Thus, Radiologist's Joinder to the Motion for Summary Judgment was appropriate and sufficient.

Auxier also argues that, although he had several visits with Physician, he had never met Radiologist and did not even know his name until discovery

occurred in this case.  Therefore, since *Wiseman* required knowledge of a wrong *as well as* knowledge of the wrongdoer, the circuit court erred in finding the claims against Radiologist and CKR were time-barred.

This argument fails for two reasons.  First, "the discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007) (citing *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999)). Here, there was no allegation of fraudulent concealment or misrepresentation.

Second, "A person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints." *Combs v. Albert Kahn Associates, Inc.*, 183 S.W.3d 190, 199 (Ky. App. 2006).  Here, Auxier testified that he obtained the X-ray results himself from the local hospital where they were performed and provided copies of them to Physician.  These records include the August 27, 2020, transcription of the dictation by Radiologist, identified by name as Dr. Robert Pope.  Auxier did not need to wait until this litigation commenced to learn the identity of an individual named in Auxier's own personal medical records to which he had direct access and possession.

**CONCLUSION**

Finding no error in the decision granting summary judgment in favor of Appellees, the Scott Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Wes Faulkner
Dina Abby
Louisville, Kentucky

BRIEF FOR APPELLEE ROBERT COUNTS POPE AND CENTRAL KENTUCKY RADIOLOGY:

Jonathan D. Weber
Lexington, Kentucky

BRIEF FOR APPELLEE SRIKANTH NITHYANANDAM:

Andrew DeSimone
Madeleine B. Loeffler
Lexington, Kentucky